FILED
CLERK, U.S. DISTRICT COURT
SEP - 9 2020
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

# SECOND AMENDED COMPLAINT

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MIKE REDFORD

Plaintiff,

v.

Case. No. CV 20-3260 JGB(PVC)

Pedro V. Castillo,

United States Magistrate Judge

Dan Henry, (**Director, Chief Executive Officer, and President**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Brandon Thompson, (**Executive Vice President of Retail, Tax and PayCard Divisions**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Daniel Eckert, (**EVP & Chief Product, Strategy and Development Officer**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Jess Unruh, (**Interim Chief Financial Officer and Chief Accounting Officer**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Philip Lerma, (**SVP & Chief Risk Officer**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Ellen Richey, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

George T. Shaheen, (**Lead Independent Director/Presiding Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Glinda Bridgforth Hodges, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

J. Chris Brewster, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Jeffrey B. Osher, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Kenneth C. Aldrich, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Rajeev V. Date, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Saturnino Nino Fanlo, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

William I. Jacobs, (**Chairman**)(OFFICIAL AND INDIVIDUAL CAPACITY);

GREENDOT CORPORATION (OFFICIAL AND INDIVIDUAL CAPACITY)

John Doe

Defendants

**PARTIES**

Mike Redford, GCD # 1207476,E2

27823 Main Street

P.O.Box 249

Morgan, Georgia 39866

## JURISDICTION

### 1. DIVERSITY JURISDICTION

28 U.S. Code§1332.Diversity of citizenship; amount in controversy; costs

(a)The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

(1)citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined insection 1603(a) of this title, as plaintiff and citizens of a State or of different States.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

(c)For the purposes of this section andsection 1441 of this title

(1)a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of

(A)every State and foreign state of which the insured is a citizen;

(B)every State and foreign state by which the insurer has been incorporated; and

(C) the State or foreign state where the insurer has its principal place of business; and

(2)the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as

the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

(d)(1)In this subsection

(A)the term class means all of theclass membersin aclass action;

(B)the term class action means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as aclass action;

(C)the term class certification order means an order issued by a court approving the treatment of some or all aspects of a civil action as aclass action;and

(D) the term class members means the persons (named or unnamed) who fall within the definition of the proposed or certifiedclassin aclass action.

(2)The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is aclass actionin which

(A) any member of aclassof plaintiffs is a citizen of a State different from any defendant;

(B) any member of aclassof plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

(C) any member of aclassof plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

(3)A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over aclass actionin which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C)whether theclass action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with theclass members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed classis dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

(4)A district court shall decline to exercise jurisdiction under paragraph (2)

(A) (i)over aclass actionin which

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II)at least 1 defendant is a defendant

(aa)from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; an

(III)principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii)during the 3-year period preceding the filing of that class action, no otherclass action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B)two-thirds or more of the members of all proposed plaintiff classesin the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

(5)Paragraphs (2) through (4) shall not apply to anyclass actionin which

(A)the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or

(B)the number of members of all proposed plaintiffclassesin the aggregate is less than 100.

(6)In anyclass action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

(7)Citizenship of the members of the proposed plaintiff classessh all be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

(8)This subsection shall apply to anyclass actionbefore or after the entry of aclass certification order by the court with respect to that action.

(9)Paragraph (2) shall not apply to anyclass action that solely involves a claim

(A)concerning a covered security as defined under 16(f)(3)[1]of the Securities Act of 1933(15 U.S.C. 78p(f)(3)[2]) and section 28(f)(5)(E) of theSecurities Exchange Act of 1934(15 U.S.C. 78bb(f)(5)(E));

(B)that relates to the internal affairs or governance of a corporation or other form of business enterprise and that

arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

(C)that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933(15 U.S.C. 77b(a)(1)) and the regulations issued there under).

(10)For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

(11)(A)For purposes of this subsection and section 1453, amass actionshall be deemed to be aclass actionremovable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

(B)(i)As used in subparagraph (A), the term mass action means any civil action (except a civil action within the scope ofsection 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in amass actionsatisfy the jurisdictional amount requirements under subsection (a).

(ii)As used in subparagraph (A), the term mass action shall not include any civil action in which

(I)all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

(II)the claims are joined upon motion of a defendant;

(III)all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or

(IV)the claims have been consolidated or coordinated solely for pretrial proceedings.

(C)(i) Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.

(ii)This subparagraph will not apply

(I) to cases certified pursuant to rule 23 of the Federal Rules of Civil Procedure; or

(II) if plaintiffs propose that the action proceed as aclass action pursuant to rule 23 of the Federal Rules of Civil Procedure.

(D)The limitations periods on any claims asserted in amass actionthat is removed to Federal court pursuant to this subsection shall be deemed tolled during the period that the action is pending in Federal court.

(e)The word States, as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

## 2. **E-Commerce Universal Jurisdiction**

Jurisdiction is the authority of a court to hear and decide a specific legal action. It is an aspect of the judicial power of a sovereign (i.e., state, province, or nation). When e-commerce crosses borders.

E-commerce jurisdiction can be a sticky business, particularly if you sell goods and services outside the state where your Web site and server are located. Traditionally, a company must have some physical ties to a state before it is subject to that state's laws. See Harvard University cyber, E-Commerce: Berkman Klein Center. Superior Court, a connection sufficient for minimum contacts may arise through an action of the defendant purposefully directed toward the forum State. The placement of a product into the stream of commerce.

## 3. **Supplemental Jurisdiction**

Supplemental jurisdiction is the authority of United States federal courts to hear additional claims substantially related to the original claim even though the court would

lack the subject-matter jurisdiction to hear the additional claims independently. Supplemental jurisdiction is the authority of United States federal courts to hear additional claims substantially related to the original claim even though the court would lack the subject-matter jurisdictionto hear the additional claims independently. 28U.S.C.§1367is a codification of theSupreme Court's rulings on ancillary jurisdiction (Owen Equipment & Erection Co. v. Kroger,437 U.S. 365(1978)) and pendent jurisdiction (United Mine Workers of America v. Gibbs,383 U.S. 715(1966)) and a superseding of the Court's treatment of pendent party jurisdiction(Finley v. United States,490 U.S. 545(1989)).

Supplemental jurisdiction refers to the various ways a federal court may hear either: state law claims, claims from parties who lack the amount in controversy requirement ofdiversity jurisdiction, when defendants are joined in claims, or when multiple plaintiffs are joined in claims, like in class action suits.

## GREENDOT CORPORATION

Dan Henry, (**Director, Chief Executive Officer, and President**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Brandon Thompson, (**Executive Vice President of Retail, Tax and PayCard Divisions**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Daniel Eckert, (**EVP & Chief Product, Strategy and Development Officer**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Jess Unruh, (**Interim Chief Financial Officer and Chief Accounting Officer**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Philip Lerma, (**SVP & Chief Risk Officer**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Ellen Richey, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

George T. Shaheen, (**Lead Independent Director/Presiding Director**);

Glinda Bridgforth Hodges, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

J. Chris Brewster, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Jeffrey B. Osher, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Kenneth C. Aldrich, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Rajeev V. Date, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

Saturnino Nino Fanlo, (**Director**)(OFFICIAL AND INDIVIDUAL CAPACITY);

William I. Jacobs, (**Chairman**)(OFFICIAL AND INDIVIDUAL CAPACITY)(OFFICIAL AND INDIVIDUAL CAPACITY);

GREENDOT CORPORATION

P.O.Box 5100

Pasadena, CA. 91117

**FROM HENCE, ALL INDIVIDUALS AND GREENDOT CORPORATION ARE HEREBY REFERRED TO AS DEFENDANTS INDIVIDUALLY AND COLLECTIVELY.**

# FACTS FOR CLAIMS

## A. GREENDOT CORPORATION CORPORATE TRANSACTION POLICY

The Board of Green Dot Corporation (the "Company") has determined that it is appropriate to reinforce the continued attention and dedication of the Company's employees to their assigned duties without distraction in circumstances arising from the possibility of a Corporate Transaction of the Company.

## B. Greendot Corporation

1) Greendot is a machinery operated by all the Defendants under their respective assigned duties, the action of one is the action of all under Corporation as an entity.

2) If Greendot Corp. breaths, so is all its members breath, the breathe of agreement of mind under Corporate policy.

3) That Plaintiff's constitutional rights under interstate commerce clause were violated.

4) That Defendants sell Greendot prepaid debit cards through CVS Corp., Walgreen Corp., Rite Corp., Walmart Corp. etc. in Atlanta, Georgia.

5) That Defendants sold Greendot prepaid debit cards through Walmart Corp. in Atlanta, Georgia in or about 25th of November 2019.

6) The consideration component is a legal term of art that generally requires that both parties to the contract receive something of value, even if it is of little value, Defendants violated this contract law. They took my money and gave me nothing back.

7) Defendants acted in bad faith, they breached the contract doing breached the covenent of implied duty of good faith and fair dealing.

8) Defendants intentionally and purposefully, deliberately did such deprivation to the Plaintiff because Plaintiff is in prison and was thought to be without legal remedy.

9) Defendants dishonored Plaintiff's reasonable expectations and performance requires by faithfulness to an agreed common purpose and consistency with the justified expectations of Greendot Corp. to Plaintiff.

10) That the Defendants' conduct was a substantial contributing cause of the Plaintiff's injury.

11) That they were violated by Defendants acting on Greendot Corporate policies and guidelines of the entity Greendot.

12) Defendants acted out of racial hostility and are know to block prisoners cards provided to them by their families for maintenance because they are in prison.

13) Defendants are liable under the doctrine of response at superior for acts that occur in the course of doing business under interstate commerce clause.

14) Plaintiff received three Greendot prepaid debit cards with collective value of $1,020.00 as Christmas gifts and attempted to use them to pay his legal fees.

15) Defendants have refused to give Plaintiff a refund despite his many letters requesting either full refund or to unblock his three Greendot prepaid debit cards.

16) Defendants blocked Plaintiff from accessing his money on Greendot prepaid cards:

17) That he diligently registered the cards.

18) Card 1 no. 4143-9702-1268-2375 Amount $500

19) Card 2 no. 4143-9702-1268-2383 Amount $500

20) Card 3 no. 4143-9701-9271-6953 Amount $20

21) Defendants blocked Plaintiff from accessing the money in the cards, but continue to deduct recurring about $7.99 monthly fees gradually defunding the money on the Greendot prepare cards.

22) Defendants continuous depletion of the funds on the cards while denying access to use the fund by Plaintiff is unjust enrichment.

23) That Plaintiff's continuous and consistent efforts to unblocked those cards by contacting Defendants through many letters were to no avail. See Exhibit "A".

24) Defendants were motivated by Corporate greed acting in violation of interstate commerce clause where the cards were purchased in Atlanta, Georgia.

25) Defendants are liable for knowing wrongful act committed and had the power to prevent its commission, but neglected and refused to do, are liable for all damages caused by the wrongful act.

26) Defendants conversion of his debit card deprived him life, liberty and property, constitutional based liberty interest and liberty and interests created by interstate commerce clause.

27) Defendants intentionally and purposefully withholding his money during the corona virus pandemic has cause great medical pain and suffering and insurmountable financial

hardship psychologically affecting his mental state and mental abuse.

28) Defendants medical indifferent violated his U.S.C.A. eighth Const. Amend.

29) Defendants breaching a contract are liable for losses that are the natural and probable consequence of the Defendants' breach of the contract.

30) That the Plaintiff can recover the amount of damages necessary to put them in the position he thought would have been in had the contract been performed.

31) In a breach of contract action, a Plaintiff may recover the amount of damages that are required to place him in the same position he would have occupied had the breach not occurred.

32) The contract is enforceable and not void.

33) Fraud in the Inducement, Plaintiff argues that he would not have never entered into the contract but for a series of lies, misrepresentations, and concealments by the Defendants.

34) Undue influence, the Defendants put extreme levels of pressure or otherwise "dominated" Plaintiff's free will by using words, conduct, or both.

35) Essentially, the Defendants forced Plaintiff by their aggressive marketing, reliability of their products to enter into the contract and had no other choice. Under these extreme circumstances, the Defendants are liable to the Plaintiff for the breach.

## C. **Greendot Corp. Cardholder Agreement**

See Exhibit "B"

## D. **Greendot Corp. Custom and Usage Preemptive Evidence**

a. Green Dot Corporation | Complaints | Better Business Bureau Profile(My account is closed. Yet, the number provided by

green dot above is the same automated number that is on the back of the card. When you call that number there are no options to speak to a representative and you are ..)

b. (What do I do if Greendot closed my card while my money from my tax refund is still there? WalletHub, Mar 19, 2018 · 1 answer. What do I do if Greendot closed my card while my money from my tax refund is still there? A friend is trying to figure out how to take his money out ...)

c. (ImageFox 17 › 2015/03/20 › green-dot-bl...,Green Dot blocks GR woman after legit tax refund deposit; problem solved - Fox 17. Mar 20, 2015 · "[I] went to go to the store yesterday, and my card declined," she recalled. She said when she called to access her Green Dot card she was told her account "has been locked out." Here's the ..)

Imagehttps://www.aspkin.com › forums

d. Warning about green dot if you live in USA - eBay Suspended & PayPal Limited Forums - Aspkin, Jul 31, 2011 · 22 posts · 4 authors. The service representative told me that my accounts would be closed due to abusing Greendot and that I ... this has been a real headache for me,as Greendot was an easy way to create an account with ...)

Imagse: https://www.aspkin.com › forums

## E. **Elements of a Breach of Contract Claim**

a. The existence of a contract;

b. Performance by the Defendants or some justification for nonperformance;

c. Failure to perform the contract by the defendants; and,

d. Resulting damages to the Plaintiff.

## F. **Contract**

i. There is existence of a contract both an oral contract and a written contract.

ii. The Plaintiff performed the duties under the contract by buying and paying for the cards.

iii. The term of the contract provides that the Defendants honor the Greendot card on purchase and dispense the fund to Plaintiff to effectuate his financial transactions of which Defendants have breached.

iv. The Plaintiff has suffered damages causing pain and suffering, financial hardships, inability to maintain basic needs of hygiene, that he suffers from diabetes, high blood pressure ,high cholesterol, at the age of 63 years old and needed the money for his medications.

v. There was an agreement, where Greendot Corp. offers prepaid debit cards.

vi. Plaintiff accepted that offer by purchasing the prepaid debit cards.

vii. Defendants give Plaintiff the prepaid debit cards(called consideration).

G. **Unjust Enrichment**

1. The Defendants received a benefit of the money paid on his three Greendot prepaid debit cards.
2. At the Plaintiff's expense of $1,020.00 Christmas gifts; and,
3. Under the circumstances that would make it unjust for the Defendants to retain the benefit without commensurate compensation.
4. Plaintiff is entitled to compensation for unjust enrichment from Defendants.
5. The elements of this cause of action are:
6. conferral of a benefit on another;
7. the other's knowledge of the benefit;
8. the other's acceptance or retention of the benefit;
9. circumstances requiring the other to pay the fair value for the benefit to avoid inequity.

10. Britton v. Turner, 6 N.H. 481 (1834) an employee who left work on a farm after nine months, but had contracted to be paid $120 at the end of one year, was entitled to receive some payment ($95) even though the contract was not completed.

### H. Breach of Fiduciary Duty Claim

a) The Defendants were acting as a fiduciary of the Plaintiff, duty owed by officers and directors of a Corporation to its customers and general public.

b) The Defendants breached a fiduciary duty to the Plaintiff, owing the fiduciary duty they intentionally and purposefully breached such duty.

c) The Plaintiff suffered damages as a result of the breach; and

d) The Defendants' breach of fiduciary duty caused the Plaintiff's damages.

e) Fiduciary Duty is a duty of utmost good faith, trust, confidence, and candor owed by a fiduciary Greendot Corporate officers to the beneficiary Plaintiff.

f) A duty to act with the highest degree of honesty and loyalty toward the person of the Plaintiff and in the best interests of the Plaintiff.

g) A fiduciaries are entire Corporate managers of Greendot having duties, created by their undertakings, to act primarily for the benefits of another in matters connected with the Greendot undertaking.

h) A fiduciary's obligations include a duty of loyalty, a duty to exercise reasonable care and skill, and a duty to deal impartially with beneficiaries.

i) Fiduciaries also owe a duty of utmost good faith.

j) Fiduciaries owe special duties because they on the financial industry with flamboyant national advertisements and have bought out their competitors like Netspent, Brinks, Gobank, Account Now, Ready Bank and Rush Card. They have become financial mogue monopolizing prepaid

cards, leaving consumers with little or no choice but ton deal with them on every such transactions.

## I. **FRAUD**

A contract that may otherwise be unenforceable under the statute of frauds may become enforceable under the doctrine of part performance. If the party seeking enforcement of the contract has partially or fulfilled its duties under the contract without objection from the other party, the performing party may be able to use its performance to hold the other party to the terms of the contract.[8]

No writing is required when:

1. Goods have been received and accepted;
2. Payment has been made and accepted;
3. Goods are specially manufactured (there is no market for them); or
4. under the UCC, the party against whom enforcement is being sought admits a certain quantity of goods.

## J. **Restitution**

The full name of this cause of action is "restitution for actions required to preserve another's life or health." It is available when a party supplies goods or services to someone else, even though the recipient is unaware or does not consent. Unawareness and non-consent can both be due to unconsciousness, but the latter also includes incapacity, which in turn refers to mental incompetence and/or infancy (minority).

a) The elements of this cause of action are:

b) the supplier acts "unofficiously", that is, isn't interfering in the affairs of the recipient for no reason;

c) the supplier acts with the intent to charge money for doing so;

d) the goods or services are necessary to prevent the recipient from suffering serious bodily injury or pain;

e) the recipient is unable to consent;

f) the supplier has no reason to know that the recipient would not consent if they could; and,

g) if the recipient is "extremely" mentally incompetent or young and objects, the non-consent is immaterial.

## K. **Federal Contract Law**

Most federal statutes regarding government contracts can be found in Title 41 of the United States Code (U.S.C.), Government Contracts. The notable exceptions to this general rule are the Anti-DeficiencyActand Armed Services ProcurementAct statutes, which can be found in Title 31 and Title 10, respectively. Most federal statutes regarding government contracts can be found in Title 41 of the United States Code (U.S.C.), Government Contracts. The notable exceptions to this general rule are the Anti-Deficiency Act and Armed Services Procurement Act statutes, which can be found in Title 31 and Title 10, respectively.

i. Title 41 - Public Contracts

ii. Federal Property and Administrative Services Act (63 Stat. 377), Office of Federal Procurement Policy Act (88 Stat. 796), and Federal Acquisition Streamlining Act (108 Stat. 3243) 41 U.S.C. § 101 et seq.

iii. Title 31 Money and Finance

Anti-Deficiency Act 31 U.S.C. § 1341 et seq.

iv. Contract law regulates the obligations established by agreement, whether express or implied, between private parties in the United States. The law of contracts varies fromstateto state; there is nationwide federal contract law in certain areas, such as contracts entered into pursuant to Federal Reclamation Law.

v. The law governing transactions involving the sale of goods has become highly standardized nationwide through widespreadadoptionof theUniform Commercial Code. There

remains significant diversity in the interpretation of other kinds of contracts, depending upon the extent to which a given state has codified its common law of contracts or adopted portions of theRestatement (Second) of Contracts.

## L. **Formation**

vi. A contract is an agreement between two or more parties creating reciprocal obligations enforceable at law. The elements of a contract are mutual consent, offer and acceptance, consideration, and legal purpose.

vii. Agreement

viii. Offer and acceptance

ix. Mutual consent, also known as ratification and meeting of the minds, is typically established through the process of offer and acceptance. However, contracts can also beimplied in fact, as discussed below. At common law, the terms of a purported acceptance must be the "mirror image" of the terms of the offer. Any variation thereof constitutes a counteroffer.

x. An offer is a display of willingness by a promissor to be legally bound by terms they specify, made in a way that would lead a reasonable person in the promisee's position to understand that an acceptance is being sought and, if made, results in an enforceable contract. Ordinarily, an offeror is permitted to revoke their offer at any time prior to a valid acceptance. This is partially due to the maxim that an offeror is the "master of his offer."

xi. In the case of options, the general rule stated above applies even when the offeror promises to hold the offer open for a certain period of time. For example, Alice says to Bob, "I'll sell my watch for $10, and you can have a week to decide." Alice is free to revoke her offer during the week, as long as Bob has not accepted the offer.

xii. However, if the offeree gives someseparateconsideration (discussed below) to keep the offer open for a certain period of time, the offeror is not permitted to revoke during that period. For example, Alice offers to sell Bob

her watch for $10. Bob gives Alice $1 to keep the offer open for a week. Alice is not permitted to revoke during the week.

xiii. A counteroffer is a new offer that varies the terms of the original offer.[2]Therefore, it is simultaneously a rejection of the original offer. For example, Alan says to Betty, "I'll sell you my watch for $10." At this point Betty has the power of acceptance. But Betty responds, "I'll only pay $8." Betty's response is a rejection of Alan's offer but gives Alan a new power of acceptance. It is possible to phrase what appears to be a counteroffer so that it does not destroy the original power of acceptance. For example, Alan says to Betty, "I'll sell you my watch for $10." Betty responds, "I wonder whether you would take $8." Betty retains her original power of acceptance (unless Alan revokes), but she does not give Alan a new power of acceptance, as she is not making an offer of her own. Therefore, she is not making a counteroffer either. As such, mere inquiries are not counteroffers.

xiv. An acceptance is an agreement, by express act or implied from conduct, to the terms of an offer, including the prescribed manner of acceptance, so that an enforceable contract is formed.

xv. In what is known as abattle of the forms, when the process of offer and acceptance is not followed, it is still possible to have an enforceable contract, as mentioned above with respect to contracts implied in fact.

## M. **Uniform Commercial Code**

The Uniform Commercial Code("UCC") dispenses with the mirror image rule in § 2-207. UCC § 2-207(1) provides that a "definite and seasonable expression of acceptance...operates as" an acceptance, even though it varies the terms of the original offer. Such an expression is typically interpreted as an acceptance when it purports to accept and agrees on the following terms of the original offer: subject matter, quantity, and price. However, such an expression is not interpreted as an acceptance if it is "expressly conditional" on the original offeror's assent to the varied terms, discussed below. This language is known as

theproviso. When the proviso is not used, the terms of the contract are determined by subsection 2. When the proviso is used, but there is no assent by the original offeror to the offeree's varied terms, yet the parties go ahead and perform (act like they have a contract, hence a contract implied in fact), the terms of the contract are determined by subsection 3. So, the terms of a contract under 2-207 are never determined by a combination of subsections 2 and 3. UCC § 2-207(2) of the statute tells what to do with additional terms. It does not explicitly address what to do with different terms.

## N. Construction

1. Uniform Commercial Code§2-301
2. Restatement §201(1)
3. Uniform Commercial Code§2-313(1)(b)

Frigaliment Importing Company v BNS International Sales Corp, 190 FSupp 116 (SDNY 1960)

## O. Express terms

Henningsen v. Bloomfield Motors, on warranties Restatement §213, parol evidence rule: a written agreement that is completely integrated discharges prior oral agreements in its scope. Mitchill v Lath 247 NY 377 (1928), Masterson v Sine 68 Cal 2d 222 (1968),Traynor J Restatement §203, trade usage non-excluded by parol evidence rules, Columbia Nitrogen Corp v Royster Co,451 F 2d 3(4th 1971) 31,000 tons of phosphatea year for $50 a ton. The buyer could rely on custom of adjusting prices in the fertilizer industry despite the contract's express price, when the market fell.Southern Concrete Services v Mableton Contractors, Inc, 407 F Supp 581 (ND Ga 1975)

## P. Implied terms

Restatement §223, courts can supply a missing term by resorting to trade usage or course of dealing "which is fairly to be regarded as establishing a common basis of understanding" UCC §1-205 and 2-208 Wood v. Lucy, Lady Duff-Gordon, 118 NE 214 (1917) Cardozo J, promise to use reasonable efforts to generate license revenues properly implied. "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal.... A promise may be lacking, and yet the whole writing may be 'instinct with and obligation,' imperfectly expressed...." UCC 2-306(2)Bloor v Falstaff Brewing Corp601 F2d 609(2nd 1979)

## Q. **Statute of Fraud**

Moreover, the writing for purposes of satisfying the statute of frauds does not need to be the actual contract. It might be a letter, memorializing and formalizing an oral arrangement already made over the phone. Therefore, the signed writing does not need to contain all of the terms that the parties agreed to. At common law, only the essential terms were required in the signed writing. Under the UCC, the only term that must be present in the writing is the quantity. The writing also does not need to be one document, but if there are multiple documents, they must all obviously refer to the same transaction, and they all must be signed. The signature itself does not need to be a full name. Any mark made with the intent to authenticate the writing is satisfactory, such as initials or even such as an X by an illiterate party.

A contract that may otherwise be unenforceable under the statute of frauds may become enforceable under the doctrine of part performance. If the party seeking enforcement of the contract has partially or fulfilled its duties under the contract without objection from the other party, the performing party may be able to use its performance to hold the other party to the terms of the contract.

**No writing is required when:**

a. Goods have been received and accepted;Payment has been made and accepted;Goods are specially manufactured (there is no

market for them); orunder the UCC, the party against whom enforcement is being sought admits a certain quantity of goods.

b. The last exception applies up to the quantity admitted, which may include the entire contract. This reversed the rule at common law that permitted a defendant to testify that he indeed contracted with the plaintiff but refuses to perform because it is not in writing.

c. Contracts implied in law differ from contracts implied in fact in that contracts implied in law are not true contracts. Contracts implied in fact are ones that the parties involved presumably intended. In contracts implied in law, one party may have been completely unwilling to participate, as shown below, especially for an action in restitution. There has been no mutual assent, in other words, but public policy essentially requires a remedy.

d. Consideration must be sufficient, but courts do not weigh the adequacy of consideration, partially because in a capitalistic society private parties are entitled and expected to determine the value of things for themselves. In other words, the things being exchanged must have some value in the eyes of the law, but the general rule is that courts do not carehow much. Love and affection, for example, would not constitute sufficient consideration, but a penny would. However, sufficient consideration that is grossly inadequate may be deemed unconscionable, discussed below.

e. Moreover, things that ordinarily constitute sufficient consideration may be deemed insufficient when they are being exchanged for fungiblet hings. For example, $1 is ordinarily sufficient consideration, and $100 is ordinarily sufficient consideration. However, if Alan and Betty agree to exchange $1 for $100, it would not be an enforceable contract for lack of consideration. An exception to this exception is when there is special significance to the $1 bill itself, such as if it was the first dollar a person made in business and carries tremendous sentimental value, similar to the peppercorn rule. Fungible things do not have to be money, though. They can be grains stored in a silo, for example. One bushel of grain being exchanged for 100 bushels of the same grain would not be sufficient consideration.

f. Promissory estoppel is a separate cause of action to breach of contract, requiring separate elements to be shown. It has the effect that in many contract like situations, the requirement of consideration need not be present.

## The elements of promissory estoppel are:

1) An express or implied promise;

2) Detrimental reliance by the promisee foreseeable to a reasonable person in the promissor's position;

3) Actual detrimental reliance by the promisee (worsening of their position); andfor specific performance (as opposed to reliance damages),

4) Injustice can only be avoided by enforcing the promise.

### Formality

Statute of Frauds and Parol evidence rule

Ordinarily, contracts do not have to be in writing to be enforceable. However, certain types of contracts do have to be reduced to writing to be enforceable, to prevent frauds and perjuries, hence the name statute of frauds, which also makes it not a misnomer (fraud need not be present to implicate the statute of frauds).

Typically the following types of contracts implicate the statute of frauds:

a) Land, including leases over a year and easements

b) Suretyships (promises to answer for the debts, defaults, or miscarriages of another)

c) Consideration of marriage (not to actually get married but to give a dowry, for example)

d) Goods over a certain amount of money (usually $500, as in the UCC)Contracts that cannot be performed within one year

e) The statute of frauds requires the signature of the party against whom enforcement is sought (the party to be sued for failure to perform). For example, Bob contracts with the

Smith Company for two years of employment. The employer would need to sign the writing.

f) Moreover, the writing for purposes of satisfying the statute of frauds does not need to be the actual contract. It might be a letter, memorializing and formalizing an oral arrangement already made over the phone. Therefore, the signed writing does not need to contain all of the terms that the parties agreed to. At common law, only the essential terms were required in the signed writing. Under the UCC, the only term that must be present in the writing is the quantity. The writing also does not need to be one document, but if there are multiple documents, they must all obviously refer to the same transaction.

## R. Uniform Commercial Code

a. The Uniform Commercial Code("UCC") dispenses with the mirror image rule in § 2-207.[4]UCC § 2-207(1) provides that a "definite and seasonableexpressionof acceptance...operates as" an acceptance, even though it varies the terms of the original offer. Such an expression is typically interpreted as an acceptance when it purports to accept and agrees on the following terms of the original offer: subject matter, quantity, and price. However, such an expression is not interpreted as an acceptance if it is "expressly conditional" on the original offeror's assent to the varied terms, discussed below. This language is known as theproviso. When the proviso is not used, the terms of the contract are determined by subsection 2. When the proviso is used, but there is no assent by the original offeror to the offeree's varied terms, yet the parties go ahead and perform (act like they have a contract, hence a contract implied in fact), the terms of the contract are determined by subsection 3. So, the terms of a contract under 2-207 are never determined by a combination of subsections 2 and 3.

b. UCC § 2-207(2) of the statute tells what to do with additional terms. It does not explicitly address what to do with different terms. A minority of states, led by California, infer that this was a typographical error by the drafters. As such, those states treat different terms in the same manner as additional terms. The majority rule, however, is that different terms do not become part of the contract; rather, both of the conflicting terms from both parties are

removed from the contract. This is known as the knockout rule. Any "gaps" resulting from the removal of these terms are "filled" by Article 2's "gap-fillers."

c. A term in a purported acceptance is differentif it directly contradicts the subject matter of a term present in the original offer. A term in a purported acceptance is additionalif it contemplates a subject matter not present at all in the original offer. As already mentioned, subsection 2 does stell what to do with additional terms. They do not become part of the contract if either party isnota merchant.

d. A merchant is defined elsewhere in the UCC as a party that regularly "deals in goods of the kind" or otherwise gives an impression of knowledge or skill regarding the subject matter of the transaction. If both parties are merchants then additional terms in a purported acceptance do become part of the contract unless any of three exceptions apply.

## S. **Formation and Agreement**

1. Formation: A contract is an agreement between two or more parties creating reciprocal obligations enforceable at law. The elements of a contract are mutual consent, offer and acceptance, consideration, and legal purpose.

2. Agreement

3. Offer and acceptance

4. Mutual consent, also known as ratification and meeting of the minds, is typically established through the process of offer and acceptance. However, contracts can also beimplied in fact, as discussed below. At common law, the terms of a purported acceptance must be the "mirror image" of the terms of the offer. Any variation thereof constitutes a counteroffer.

5. An offer is a display of willingness by a promissor to be legally bound by terms they specify, made in a way that would lead a reasonable person in the promisee's position to understand that an acceptance is being sought and, if made, results in an enforceable contract. Ordinarily, an offeror is permitted to revoke their offer at any time prior to a valid acceptance. This is partially due to the maxim that an offeror is the "master of his offer."

6. In the case of options, the general rule stated above applies even when the offeror promises to hold the offer open for a certain period of time. For example, Alice says to Bob, "I'll sell you my watch for $10, and you can have a week to decide." Alice is free to revoke her offer during the week, as long as Bob has not accepted the offer.

7. However, if the offeree gives someseparateconsideration (discussed below) to keep the offer open for a certain period of time, the offeror is not permitted to revoke during that period. For example, Alice offers to sell Bob her watch for $10. Bob gives Alice $1 to keep the offer open for a week. Alice is not permitted to revoke during the week.

8. A counteroffer is a new offer that varies the terms of the original offer. Therefore, it is simultaneously a rejection of the original offer. For example, Alan says to Betty, "I'll sell you my watch for $10." At this point Betty has the power of acceptance. But Betty responds, "I'll only pay $8." Betty's response is a rejection of Alan's offer but gives Alan a new power of acceptance. It is possible to phrase what appears to be a counteroffer so that it does not destroy the original power of acceptance. For example, Alan says to Betty, "I'll sell you my watch for $10." Betty responds, "I wonder whether you would take $8." Betty retains her original power of acceptance (unless Alan revokes), but she does not give Alan a new power of acceptance, as she is not making an offer of her own. Therefore, she is not making a counteroffer either. As such, mere inquiries are not counteroffers.

9. An acceptance is an agreement, by express act or implied from conduct, to the terms of an offer, including the prescribed manner of acceptance, so that an enforceable contract is formed.

10. In what is known as abattle of the forms, when the process of offer and acceptance is not followed, it is still possible to have an enforceable contract, as mentioned above with respect to contracts implied in fact.

T. **Title 31 Money and Finance**

Anti-Deficiency Act 31 U.S.C. § 1341 et seq.

Contract law regulates the obligations established by agreement, whether express or implied, between private parties in the United States. The law of contracts varies fromstateto state; there is nationwide federal contract law in certain areas, such as contracts entered into pursuant to Federal Reclamation Law.

The law governing transactions involving the sale of goods has become highly standardized nationwide through widespreadadoptionof theUniform Commercial Code. There remains significant diversity in the interpretation of other kinds of contracts, depending upon the extent to which a given state has codified its common law of contracts or adopted portions of the Restatement (Second) of Contracts.

U. **Negligence**

i. Defendants owed Plaintiff a duty of reasonable care.

ii. Defendants owed Plaintiff a duty of reasonable care to promptly provide his funds instead of putting him in a position where they cause him pain and suffering, financial hardships, inability to maintain basic needs of hygiene, that he suffers from diabetes, high blood pressure ,high cholesterol, at the age of 63 years old and needed the money for his medications were gross negligence, where the Defendants lacked even slight diligence or care.

iii. Defendants breached that duty by failing to make funds available to Plaintiff after repetitious letters to Green dot Corporation, none of those letters were replied to by the Defendants.

iv. The breach of the duty resulted in damages causing negligent/intentional infliction of emotional distress, fraud and misrepresentation.

v. The breach of duty proximately caused thoses damages.

V. **Federal Constitution**

1) Defendants by withholding his funds, they denied him ability to exercise 18 U.S. Code§1341. Frauds and swindles Whoever, having devised or intending to devise any scheme or artifice

to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act(42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

2) Defendants by withholding his funds, they denied him ability to exercise First Amendment right to freedom of speech. The First Amendment guarantees freedoms concerning religion,expression, assembly, and the right to petition. It guarantees freedom of expression by prohibiting Congress from restricting the press or the rights of individuals to speak freely. Careful reading of the First Amendmentreveals that it protects several basic liberties freedom of religion, speech, press, petition, and assembly. Interpretation of theamendmentis far from easy, as court case after court case has tried to define the limits of these freedoms. The First Amendment states: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the

people peaceably to assemble, and to petition the Government for a redress of grievances.

3) Defendants by withholding his funds, they denied him ability to exercise Sixth Amendment right to counsel against deprivation of right to hire and retain counsel. The right to counsel refers to theright of a criminal defendant to have a lawyer assist in his defense, even if he cannot afford to pay for an attorney. The Sixth Amendment gives defendants the right to counsel in federal prosecutions. The Sixth Amendment guarantees the rights of criminal defendants, including the right to a public trial without unnecessary delay, the right to a lawyer, the right to an impartial jury, and the right to know who your accusers are and the nature of the charges and evidence against you.

4) Defendants by withholding his funds, they denied him ability to exercise Seventh Amendment right to financial ability to take his case to trial. In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law. The Seventh Amendmentwas part of the Bill of Rights that was added to the Constitution on December 15, 1791. This amendment protects the right to a trial by jury in civil court cases.

5) Defendants by withholding his funds, they denied him ability to exercise Eight Amendment right against deprivation of medical care;

6) The Eighth Amendment to the United States Constitution states: Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Prison officials may not act with deliberate indifference to a serious medical need. TheEighth Amendment protects your right tomedical care. The Constitution guarantees prisoners this right, even though it does not guaranteemedical careto people outside of prison. Prison officials are obligated under the Eighth Amendment to provide prisoners with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103 (1976). This principle applies regardless of whether the medical care is provided by governmental employees or by private medical staff under contract with the government. In order to prevail on a constitutional claim of inadequate

medical care, prisoners must show that prison officials treated them with "deliberate indifference to serious medical needs." West v. Atkins, 487 U.S. 42, 57-58 (1988); Richardson v. McKnight, 521 U.S. 399 (1997). A prison official demonstrates "deliberate indifference" if he or she recklessly disregards a substantial risk of harm to the prisoner. Farmer v. Brennan, 511 U.S. 825, 836 (1994). This is a higher standard than negligence, and requires that the official knows of and disregards an excessive risk of harm to the prisoner. The prison official does not, however, need to know of a specific risk from a specific source. Bradley v. Puckett 157 F.3d 1022, 1025 (5th Cir. 1998). Proof of prison officials' knowledge of a substantial risk to a prisoner's health can be proven by circumstantial evidence. For example, it may be inferred from "the very fact that the risk was obvious." This circumstantial proof may be shown by deterioration in prisoners' health, such as obvious conditions like sharp weight loss. A prison official cannot "escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist."

7) Defendants by withholding his funds, they denied him ability to exercise Thirteenth Amendment right against deprivation of funds which continued his status as Negro slave and Section 1 Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction. Passed by Congress on January 31, 1865, and ratified on December 6, 1865, the13th amendmentabolished slavery in the United States and provides that "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States.

Section 2. Congress shall have power to enforce this article by appropriate legislation.

8) Defendants by withholding his funds, they denied him ability to exercise Fourteenth Amendment right against lack of funds resulting in deprivation of due process, equal protection, privileges and immunities. All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State

wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## W. **California Constitution and Statute**

California Code, Penal Code - PEN § 484

(a)Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to himor her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of hisor herwealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test, and in determining the value of services received the contract price shall be the test. If there be no contract price, the reasonable and going wage for the service rendered shall govern. For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question. The hiring of any additional employee or employees without advising each of them of every labor claim due and unpaid and every judgment that the employer has been unable to meet shall be prima facie evidence of intent to defraud.

For centuries, people in this country have assembled to demand change and protest abuse of power. Protests have been central to nearly every major political advancement since the founding of the United States. The right to protest is enshrined in the First Amendment, which prohibits the government from abridging the freedom of speech or the right of the people peaceably to assemble. Californias Constitution likewise guarantees the right of the people to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good.

**Dr. Martin Luther King, Jr. said the greatness of America is the right to protest for right.**

a) Freedom of expression under the california constitution,

published in Volume 6 of California Legal History (2011)

liberty and equality under the california constitution,

published in Volume 7 of California Legal History (2012)

b) Article I, section 9 of Californias first constitution read:

Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions on indictments for libels, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libellous is true, and was published with good motives and for justi?able ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact.

c) The constitution of every state in the Union guarantees to every citizen the right to freely speak, write, and publish his sentiments on all subjects, and prohibits the passage of any law to restrain or abridge the liberty of speech or of the press. What one may lawfully speak he may lawfully write and publish. The rights thus preserved by the constitution are dear to the heart of every American, and their exercise can be complained of by the courts in a

d) Fourth Amendment right to be left alone in the privacy of his 12 home;The right of the people to be secure in their persons, houses, papers, and effects. Fourth Amendment case law hinged on a citizen'sproperty rightsthat is, when the government physically intrudes on "persons, houses, papers, or effects" for the purpose of obtaining information, a "search" within the original meaning of the Fourth Amendment has occurred. This decision in Katz v. United States 389 U.S. 347 (1967) was later developed into the now commonly used two-prong test, adopted in Smith v. Maryland, 442 U.S. 735 (1979), for determining whether a search has occurred for purposes of the Fourth Amendment: Freiwald, Susan (2007)."First Principles of Communications Privacy"(PDF).Stanford Technology Law Review(3). Archived fromthe original(PDF)on June 17, 2013. Sorosky, Schuyler. "United States v. Forrester: An Unwarranted Narrowing of the Fourth Amendment,"Loyola of Los Angeles Law Review, Vol. 41, p. 1121, 1126 (2008). A person "has exhibited an actual (subjective) expectation of privacy"; and society is prepared to recognize that this expectation is (objectively) reasonable.

e) Fifth Amendment right to due process, [against] deprivation of funds to litigate cases in the court of law;

f) 18 U.S. Code§1341.Frauds and swindles

California Code, Penal Code - PEN § 484

## X. **Federal Tort Claims Act**

1) The Federal Tort Claims Act(August 2, 1946, ch.646, Title IV, 60 Stat.812,28 U.S.C. Part VI, Chapter 171 and 28U.S.C.§1346) ("FTCA") is a 1946 federal statutethat permits private parties to sue the United States in a federal courtfor most torts committed by persons acting on behalf of the United States. Historically, citizens have not been able to sue their statea doctrine referred to assovereign immunity. The FTCA constitutes a limited waiver of sovereign immunity, permitting citizens to pursue some tort claims against the government.

2) Limitations

Under the FTCA, "the United States is liable in the same manner and to the same extent as a private individual under like circumstances, but is not liable for interest prior to judgment or for punitive damages." 28 U.S.C.§2674. Federal courts have jurisdiction over such claims, but apply the law of the State "where the act or omission occurred". 28 U.S.C.§1346(b). Thus, both federal and State law may impose limitations on liability.

## Y. **Damages**

a) Pain and suffering debilitating, disfuntioning him to maintain self daily routines.

b) Financial hardships resulting on inability to secure basic needs of life.

c) Inability to maintain basic needs of hygiene, discomforts, smelling and resentment by others due to stenching body odors.

d) Aggravated his diabetes pain, shivers, drowsy, sleepless night.

e) Aggravated his high blood pressure, painful headaches,sleepless night.

f) Aggravated his high cholesterol, at the age of 63 years old and needed the money for his medications.

g) Plaintiff could not pay his medical co-pay to see the prison doctor.

h) Plaintiff could not pay for his medication.

i) Plaintiff could not buy medications of the prison store because of lack of funds the doings of the Defendants.

j) Plaintiff inability to pay his medical bills has resulted on his prison account being frozen.

k) Plaintiff has to depend on prison indigent postages because he could not buy stamps of the store.

l) Plaintiff could not pay for his litigation costs and fees.

m) Plaintiff could not competitively litigate both his criminal and civil actions with Defendants withholding his funds.

Z.

# CLAIMS

I. **FIRST CAUSE OF ACTION**

The actions of the Defendants stated in facts section above numbered A through I done either individually or collectively in the name of Greendot Corp. violated Plaintiff's United States Interstate Commerce Clause, right to contract,life, liberty and property, U.S.C.A. First(freedom of speech); Fourth(the fight to be left alone in the privacy of his home); Fifth( due process, deprivation of funds to litigate cases in the court of law); Sixth( the right to counsel deprivation of funds to hire and retain counsel); seventh( financial ability to take his case to trial); eighth ( deprivation of medical care); thirteenth ( deprivation of funds continued his status as Negro slave); Fourteenth(lack of funds resulting deprivation of due process, equal protection, privileges and immunities).

a. Defendants violated their Greendot Corporate policies when they failed to address the issues raised concerning his prepaid cards violating his constitutional rights as enumerated above.

b. Defendants Greendot Corp. violated his constitutional rights enumerated in facts section A above.

c. The the Greendot Corporation and its managements participated directly or indirectly, subconsciously or consciously in the constitutional violation, that they exist a sufficient causal connection to the violation was set in motion a series of acts by the said Greendot Corporation and its management.

d. That when they injurious policymakers was quickly brought to their attention through a series of notices vin form of letters.

e. That the Greendot Corporation and its management knowingly refused to terminate [such acts], which he knew or

reasonably should have known, would cause others to inflict the constitutional injury.

f. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts which did cause Plaintiff harm as alleged in facts section above numbered A through I and claims 1 through 7.

g. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts, stated in the facts section above numbered A through I and claims 1 through 7.

h. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions harm as alleged resulting from each Defendants alleged acts stated in the facts section above numbered A through I and claims 1 through 7. and,

i. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions violated both federal statutes; constitutional rights; laws; and treaty each Defendant violated as alleged in stated in the facts section above numbered A through I and claims 1 through 7.

That Greendot Corporation and its management as supervisor may be held accountable only for his own culpable action or inaction in promulgation of harmful and injurious policies and policymakers failed to proving the training,

supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.

j. That Greendot Corporation and its management from Pasadena, California transgressed through Federal territories, Highways, in violation of E-Commerce laws, Art. I, Sec. 26 8, Cl. 3 of the US Constitution did commerce brick and mortal business by selling its products in the State of Georgia. Where in November and December, 2019 Plaintiff entered into written contracts by purchasing Defendants products. That theft ,conversion and act of Defendants' fraudulent activitions had deprived his constitutional rights as alleged in the facts and claims above.

II. **SECOND CAUSE OF ACTION**

The actions of the Defendants stated in facts section above numbered A through I done either individually or collectively in the name of Greendot Corp. violated Plaintiff's United States Interstate Commerce Clause, right to contract,life, liberty and property, U.S.C.A. First(freedom of speech); Fourth(the fight to be left alone in the privacy of his home); Fifth( due process, deprivation of funds to litigate cases in the court of law); Sixth( the right to counsel deprivation of funds to hire and retain counsel); seventh( financial ability to take his case to trial); eighth ( deprivation of medical care); thirteenth ( deprivation of funds continued his status as Negro slave); Fourteenth(lack of funds resulting deprivation of due process, equal protection, privileges and immunities).

a) Defendants' discriminatory treatment of Plaintiff's issues violated Greendot Corp. cardholder agreement.

b) Defendants, failure to abid to cardholder agreement in addressing complaint concerning his prepaid cards violated his constitutional rights as enumerated in facts section C. above.

c) Defendants, employees of Greendot Corp. have custom and usage in the way they treat minority customers cardholder agreement in addressing complaint concerning prepaid cards

violated his constitutional rights as enumerated in facts section D. above.

d) The the Greendot Corporation and its managements participated directly or indirectly, subconsciously or consciously in the constitutional violation, that they exist a sufficient causal connection to the violation was set in motion a series of acts by the said Greendot Corporation and its management.

e) That when they injurious policymakers was quickly brought to their attention through a series of notices vin form of letters.

f) That the Greendot Corporation and its management knowingly refused to terminate [such acts], which he knew or reasonably should have known, would cause others to inflict the constitutional injury.

g) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts which did cause Plaintiff harm as alleged in facts section above numbered A through I and claims 1 through 7.

h) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts, stated in the facts section above numbered A through I and claims 1 through 7.

i) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions harm as alleged resulting from each Defendants alleged acts stated in the facts section above numbered A through I and claims 1 through 7. and,

j) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions violated both federal statutes; constitutional rights; laws; and treaty each Defendant violated as alleged in stated in the facts section above numbered A through I and claims 1 through 7.

That Greendot Corporation and its management as supervisor may be held accountable only for his own culpable action or inaction in promulgation of harmful and injurious policies and policymakers failed to proving the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.

k) That Greendot Corporation and its management from Pasadena, California transgressed through Federal territories, Highways, in violation of E-Commerce laws, Art. I, Sec. 8, Cl. 3 of the US Constitution did commerce brick and mortal business by selling its products in the State of Georgia. Where in November and December, 2019 Plaintiff entered into written contracts by purchasing Defendants products. That theft ,conversion and act of Defendants' fraudulent activitions had deprived his constitutional rights as alleged in the facts and claims above.

## III. **THIRD CAUSE OF ACTION**

The actions of the Defendants stated in facts section above numbered A through I done either individually or collectively in the name of Greendot Corp. violated Plaintiff's United States Interstate Commerce Clause, right to contract,life, liberty and property, U.S.C.A. First(freedom of speech); Fourth(the fight to be left alone in the privacy of his home); Fifth( due process, deprivation of funds to litigate cases in the court of law); Sixth( the right to counsel deprivation of funds to hire and retain counsel); seventh( financial ability to take his case to trial); eighth ( deprivation of medical care); thirteenth (

deprivation of funds continued his status as Negro slave); Fourteenth(lack of funds resulting deprivation of due process, equal protection, privileges and immunities).

i. Defendants knew or should have known of the existence of a contract;

ii. None performance by the Defendants or some justification for nonperformance were proffered to Plaintiff on request.

iii. Failure to perform the contract by the defendants, resulting damages to the Plaintiff not because of impossibilities but their refusal to honor the contract.

iv. The defense of impossibility of performance is straightforward. If the defendant cannot perform under the contract and the event causing the impossibility of performance is outside of the defendants' control then the defendants may be "excused" from performance.

v. Defendants'failure to address Plaintiff's complaint concerning his prepaid cards violated his constitutional rights as enumerated in facts section E. above.

vi. The the Greendot Corporation and its managements participated directly or indirectly, subconsciously or consciously in the constitutional violation, that they exist a sufficient causal connection to the violation was set in motion a series of acts by the said Greendot Corporation and its management.

vii. That when they injurious policymakers was quickly brought to their attention through a series of notices vin form of letters.

viii. That the Greendot Corporation and its management knowingly refused to terminate [such acts], which he knew or reasonably should have known, would cause others to inflict the constitutional injury.

ix. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts which did cause Plaintiff harm as alleged in facts section above numbered A through I and claims 1 through 7.

x. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts, stated in the facts section above numbered A through I and claims 1 through 7.

xi. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions harm as alleged resulting from each Defendants alleged acts stated in the facts section above numbered A through I and claims 1 through 7. and,

xii. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions violated both federal statutes; constitutional rights; laws; and treaty each Defendant violated as alleged in stated in the facts section above numbered A through I and claims 1 through 7.

xiii. That Greendot Corporation and its management as supervisor may be held accountable only for his own culpable action or inaction in promulgation of harmful and injurious policies and policymakers failed to proving the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.

xiv. That Greendot Corporation and its management from Pasadena, California transgressed through Federal territories, Highways, in violation of E-Commerce laws, Art. I, Sec. 26 8, Cl. 3 of the US Constitution did commerce brick and

mortal business by selling its products in the State of Georgia. Where in November and December, 2019 Plaintiff entered into written contracts by purchasing Defendants products. That theft ,conversion and act of Defendants' fraudulent activitions had deprived his constitutional rights as alleged in the facts and claims above.

## VI. **FOURTH CAUSE OF ACTION**

The actions of the Defendants stated in facts section above numbered A through I done either individually or collectively in the name of Greendot Corp. violated Plaintiff's United States Interstate Commerce Clause, right to contract,life, liberty and property, U.S.C.A. First(freedom of speech); Fourth(the fight to be left alone in the privacy of his home); Fifth( due process, deprivation of funds to litigate cases in the court of law); Sixth( the right to counsel deprivation of funds to hire and retain counsel); seventh( financial ability to take his case to trial); eighth ( deprivation of medical care); thirteenth ( deprivation of funds continued his status as Negro slave); Fourteenth(lack of funds resulting deprivation of due process, equal protection, privileges and immunities).

1) Defendants intentionally and purposefully breached the contract.

2) Defendants knew or should have known that there is an existence of a contract both an oral contract and a written contract.

3) The Plaintiff purchased prepaid cards for purposes enumerated on section F. above.

4) Defendants owe duties to Plaintiff under the contract by buying and paying for the cards.

5) The term of the contract provides that the Defendants honor the Greendot card on purchase and dispense the fund for Plaintiff to effectuate his financial needs, nonperformance of which harmed and injured Plaintiff, section I.

6) Defendants' treatment of Plaintiff constituted a deprivation of liberty requiring due process.

7) The Plaintiff has suffered damages causing pain and suffering, financial hardships, inability to maintain basic needs of hygiene, that he suffers from diabetes, high blood pressure , high cholesterol, at the age of 63 years old and needed the money for his medications.

8) Defendants' treatment of Plaintiff constituted deliberate indifference to serious medical needs of prisoner.

9) It constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

10) It violated substantive due process of the Plaintiff.

11) Those were interstate transactions between California and Georgia,there was an agreement, where Greendot Corp. offers prepaid debit cards.

12) Their actions violated United States Constitution on Interstate Commerce Clause.

13) Commerce clause,provision of the U.S.Constitution (Article I, Section 8) that authorizes Congress to regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes.

14) Plaintiff accepted that offer by purchasing the prepaid debit cards under the facts of section F. above with expectations of Greendot Corp. performance.

15) Defendants gave Plaintiff the prepaid debit cards(called consideration), but withheld access to the funds with intention to monthly fees to deplet the funds by conversion.

16) Conversion is an intentional tort consisting of taking with the intent of exercising over the chattel an ownership inconsistent with the real owner's right of possession.

17) The the Greendot Corporation and its managements participated directly or indirectly, subconsciously or consciously in the constitutional violation, that they exist a sufficient causal connection to the violation was set in motion a series of acts by the said Greendot Corporation and its management.

18) That when they injurious policymakers was quickly brought to their attention through a series of notices vin form of letters.

19) That the Greendot Corporation and its management knowingly refused to terminate [such acts], which he knew or reasonably should have known, would cause others to inflict the constitutional injury.

20) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts which did cause Plaintiff harm as alleged in facts section above numbered A through I and claims 1 through 7.

21) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts, stated in the facts section above numbered A through I and claims 1 through 7.

22) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions harm as alleged resulting from each Defendants alleged acts stated in the facts section above numbered A through I and claims 1 through 7. and,

23) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions violated both federal statutes; constitutional rights; laws; and treaty each Defendant

violated as alleged in stated in the facts section above numbered A through I and claims 1 through 7.

24) That Greendot Corporation and its management as supervisor may be held accountable only for his own culpable action or inaction in promulgation of harmful and injurious policies and policymakers failed to proving the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.

**25)** That Greendot Corporation and its management from Pasadena, California transgressed through Federal territories, Highways, in violation of E-Commerce laws, Art. I, Sec. 26 8, Cl. 3 of the US Constitution did commerce brick and mortal business by selling its products in the State of Georgia. Where in November and December, 2019 Plaintiff entered into written contracts by purchasing Defendants products. That theft ,conversion and act of Defendants' fraudulent activitions had deprived his constitutional rights as alleged in the facts and claims above.

V. **FIFTH CAUSE OF ACTION**

The actions of the Defendants stated in facts section above numbered A through I done either individually or collectively in the name of Greendot Corp. violated Plaintiff's United States Interstate Commerce Clause, right to contract,life, liberty and property, U.S.C.A. First(freedom of speech); Fourth(the fight to be left alone in the privacy of his home); Fifth( due process, deprivation of funds to litigate cases in the court of law); Sixth( the right to counsel deprivation of funds to hire and retain counsel); seventh( financial ability to take his case to trial); eighth ( deprivation of medical care); thirteenth ( deprivation of funds continued his status as Negro slave); Fourteenth(lack of funds resulting deprivation of due process, equal protection, privileges and immunities).

1. The Defendants received a benefit of the money paid on his three Greendot prepaid debit cards.
2. The Defendants withheld the fraudulently withheld the funds.

3. Fraud lawcovers a broad range of crimes and civil tort actions that address situations in which a person wrongfully obtains money, property, or other benefits by deceit, for unjust enrichment.

4. At the Plaintiffs expense of $1,020.00 Christmas gifts.

5. Fraud is a broad term that refers to acts intended to swindle someone. In essence, it's the use of intentional deception for monetary or personal gain.

6. Under the circumstances that would make it unjust for the Defendants to retain the benefit without commensurate compensation under unjust enrichment.

7. Fraud always includes a false statement, misrepresentation or deceitful conduct.

8. The purpose is to gain something of value, usually money, by misleading or deceiving someone into believing something that the perpetrator knows to be false.

9. Plaintiff is entitled to compensation for unjust enrichment from Defendants.

10. Defendants'failure to address Plaintiff's complaint concerning his prepaid cards violated his constitutional rights as enumerated in facts section F. above.

11. The the Greendot Corporation and its managements participated directly or indirectly, subconsciously or consciously in the constitutional violation, that they exist a sufficient causal connection to the violation was set in motion a series of acts by the said Greendot Corporation and its management.

12. That when they injurious policymakers was quickly brought to their attention through a series of notices vin form of letters.

13. That the Greendot Corporation and its management knowingly refused to terminate [such acts], which he knew or reasonably should have known, would cause others to inflict the constitutional injury.

14. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce

universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts which did cause Plaintiff harm as alleged in facts section above numbered A through I and claims 1 through 7.

15. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts, stated in the facts section above numbered A through I and claims 1 through 7.

16. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions harm as alleged resulting from each Defendants alleged acts stated in the facts section above numbered A through I and claims 1 through 7. and,

17. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions violated both federal statutes; constitutional rights; laws; and treaty each Defendant violated as alleged in stated in the facts section above numbered A through I and claims 1 through 7.

18. That Greendot Corporation and its management as supervisor may be held accountable only for his own culpable action or inaction in promulgation of harmful and injurious policies and policymakers failed to proving the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.

**19.** That Greendot Corporation and its management from Pasadena, California transgressed through Federal territories, Highways, in violation of E-Commerce laws, Art. I, Sec. 26 8, Cl. 3 of the US Constitution did commerce brick and mortal business by selling its products in the State of Georgia. Where in November and December, 2019 Plaintiff entered into written contracts by purchasing Defendants products. That theft ,conversion and act of Defendants' fraudulent activitions had deprived his constitutional rights as alleged in the facts and claims above.

V. **SIXTH CAUSE OF ACTION**

The actions of the Defendants stated in facts section above numbered A through I done either individually or collectively in the name of Greendot Corp. violated Plaintiff's United States Interstate Commerce Clause, right to contract,life, liberty and property, U.S.C.A. First(freedom of speech); Fourth(the fight to be left alone in the privacy of his home); Fifth( due process, deprivation of funds to litigate cases in the court of law); Sixth( the right to counsel deprivation of funds to hire and retain counsel); seventh( financial ability to take his case to trial); eighth ( deprivation of medical care); thirteenth ( deprivation of funds continued his status as Negro slave); Fourteenth(lack of funds resulting deprivation of due process, equal protection, privileges and immunities).

i. The Defendants were acting as a fiduciary of the Plaintiff, duty owed by officers and directors of a Corporation to its customers and general public protected by United States Constitution.

ii. Consumer protection is the practice of safeguarding buyers of goods and services, and the public, against unfair practices in the marketplace. Consumer protection measures are often established by law.

iii. Consumer protection measures are often established by law. Such laws are intended to prevent businesses from engaging infraudor specifiedunfair practicesin order to gain an advantage over competitors or to mislead consumers.

iv. They may also provide additional protection for the general public which may be impacted by a product (or its production) even when they are not the direct purchaser or consumer of that product.

v. Competition law is a law that promotes or seeks to maintain market competitionby regulating anti-competitive conduct by companies.

vi. Competition law is known as antitrust law in the United States for historical reasons, and as "anti-monopolylaw"

vii. The Defendants breached a fiduciary duty to the Plaintiff, owing the fiduciary duty they intentionally and purposefully breached such duty violating U.S. Constitution stated above.

viii. The Plaintiff suffered damages as a result of the breach, violating U.S. Constitution stated above.

ix. The Defendants' breach of fiduciary duty caused the Plaintiffs damages, violating U.S. Constitution stated above.

x. Fiduciary Duty is a duty of utmost good faith, trust, confidence, and candor owed by a fiduciary Greendot Corporate officers to the beneficiary Plaintiff, violating U.S. Constitution stated above.

xi. A duty to act with the highest degree of honesty and loyalty toward the person of the Plaintiff and in the best interests of the Plaintiff, violating U.S. Constitution stated above.

xii. A fiduciaries are entire Corporate managers of Greendot having duties, created by their undertakings, to act primarily for the benefits of another in matters connected with the Greendot undertaking, violating U.S. Constitution stated above.

xiii. A fiduciarys obligations include a duty of loyalty, a duty to exercise reasonable care and skill, and a duty to deal impartially with beneficiaries, violating U.S. Constitution stated above.

xiv. Fiduciaries also owe a duty of utmost good faith, violating U.S. Constitution stated above.

xv. Fiduciaries owe special duties because they on the financial industry with flamboyant national advertisements and bought out their competitors like Net spent,Brinks,Gobank,Account Now,Ready Bank and Rush Card. They have become financial mogue monopolizing prepaid cards, leaving consumers with little or no choice but ton deal with them on every such transactions, violating U.S. Constitution stated above.

**xvi.** Defendants'failure to address Plaintiff's complaint concerning his prepaid cards violated his constitutional rights as enumerated in facts section H. above.

xvii. The the Greendot Corporation and its managements participated directly or indirectly, subconsciously or consciously in the constitutional violation, that they exist a sufficient causal connection to the violation was set in motion a series of acts by the said Greendot Corporation and its management.

xviii. That when they injurious policymakers was quickly brought to their attention through a series of notices vin form of letters.

xix. That the Greendot Corporation and its management knowingly refused to terminate [such acts], which he knew or reasonably should have known,w would cause others to inflict the constitutional injury.

xx. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts which did cause Plaintiff harm as alleged in facts section above numbered A through I and claims 1 through 7.

xxi. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts, stated in the facts section above numbered A through I and claims 1 through 7.

xxii. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions harm as alleged resulting from each Defendants alleged acts stated in the facts section above numbered A through I and claims 1 through 7. and,

xxiii. That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions violated both federal statutes; constitutional rights; laws; and treaty each Defendant violated as alleged in stated in the facts section above numbered A through I and claims 1 through 7.

xxiv. That Greendot Corporation and its management as supervisor may be held accountable only for his own culpable action or inaction in promulgation of harmful and injurious policies and policymakers failed to proving the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.

**xxv.** That Greendot Corporation and its management from Pasadena, California transgressed through Federal territories, Highways, in violation of E-Commerce laws, Art. I, Sec. 26 8, Cl. 3 of the US Constitution did commerce brick and mortal business by selling its products in the State of Georgia. Where in November and December, 2019 Plaintiff entered into written contracts by purchasing Defendants products. That theft ,conversion and act of Defendants' fraudulent activitions had deprived his constitutional rights as alleged in the facts and claims above.

VI. **<u>SEVENTH CAUSE OF ACTION</u>**

The actions of the Defendants stated in facts section above numbered A through I done either individually or

collectively in the name of Greendot Corp. violated Plaintiff's United States Interstate Commerce Clause, right to contract,life, liberty and property, U.S.C.A. First(freedom of speech); Fourth(the fight to be left alone in the privacy of his home); Fifth( due process, deprivation of funds to litigate cases in the court of law); Sixth( the right to counsel deprivation of funds to hire and retain counsel); seventh( financial ability to take his case to trial); eighth ( deprivation of medical care); thirteenth ( deprivation of funds continued his status as Negro slave); Fourteenth(lack of funds resulting deprivation of due process, equal protection, privileges and immunities).

a) Defendants owed Plaintiff a duty of reasonable care, and this legal obligation was violated by not honoring the contract.

b) A breach is a violation of a law or duty, the Defendants breached their duties, they are liable for negligence.

c) Defendants owed Plaintiff a duty of reasonable care to promptly provide his funds instead of putting him in a position where they cause him pain and suffering, financial hardships, inability to maintain basic needs of hygiene, that he suffers from diabetes, high blood pressure ,high cholesterol, at the age of 63 years old and needed the money for his medications were gross negligence, where the Defendants lacked even slight diligence or care.

d) The breach of duty caused harm to the Plaintiff, deliberate indifference to standard of medical care for elderly black man with major medical needs.

e) The Eighth Amendment of the Constitution protects prisoners from cruel and unusual punishment.

f) In 1976, the Supreme Court said in Estelle v. Gamble that a prison staff's deliberate indifference to the serious medical needs of prisoners is cruel and unusual punishment forbidden by the Eighth Amendment.

g) Estelle v. Gamble that a prison staff's deliberate indifference to the serious medical needs of prisoners is cruel and unusual punishment forbidden by the Eighth Amendment.

h) Defendants breached that duty by failing to make funds available to Plaintiff after repetitious letters to Green dot Corporation, none of those letters were replied to by the Defendants mounting to violation of Estelle v. Gamble.

i) Where the laws of intentional torts allow a plaintiff to sue for harm the defendant caused on purpose, the laws of negligence allow a plaintiff to sue for harm the defendant caused either by accident or through reckless behavior.

j) The defendant breached that legal duty by acting or failing to act in a certain way.

k) The defendants knew or should have known, could reasonably have foreseen that theirs actions might cause an injury to 63 years old Blackman with major major medical life threatening chronic cares.

l) The defendants owe the plaintiff a legal duty to act with reasonable care in an urgent medical needs in certain situation.

m) It was the defendants' actions or inaction that actually caused the plaintiff's injury.

n) The breach of the duty resulted in damages causing negligent/intentional infliction of emotional distress, fraud and misrepresentation.

o) The defendant breached this duty by doing or not doing something that a reasonably prudent person would do under similar circumstances.

p) The Plaintiff was harmed or injured as a result of the defendants' actions.

q) The breach of duty proximately caused thoses damages.

**r)** Defendants'failure to address Plaintiff's complaint concerning his prepaid cards violated his constitutional rights as enumerated in facts section I. above.

s) The the Greendot Corporation and its managements participated directly or indirectly, subconsciously or consciously in the constitutional violation, that they exist a sufficient causal connection to the violation was set in motion a series of acts by the said Greendot Corporation and its management.

t) That when they injurious policymakers was quickly brought to their attention through a series of notices vin form of letters.

u) That the Greendot Corporation and its management knowingly refused to terminate [such acts], which he knew or reasonably should have known, would cause others to inflict the constitutional injury.

v) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts which did cause Plaintiff harm as alleged in facts section above numbered A through I and claims 1 through 7.

w) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged acts, stated in the facts section above numbered A through I and claims 1 through 7.

x) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions harm as alleged resulting from each Defendants alleged acts stated in the facts section above numbered A through I and claims 1 through 7. and,

y) That each Defendant separately and collectively in pursuant to Greendot corporate business policy and as policemaker contrary to E-commerce law and E-commerce universal jurisdiction on November 8 through December 15, 2019 and in the State of Georgia from Greendot Corporate office in Pasadena, California committed the alleged whose actions violated both federal statutes; constitutional rights; laws; and treaty each Defendant violated as alleged in

stated in the facts section above numbered A through I and claims 1 through 7.

z) That Greendot Corporation and its management as supervisor may be held accountable only for his own culpable action or inaction in promulgation of harmful and injurious policies and policymakers failed to proving the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.

aa) That Greendot Corporation and its management from Pasadena, California transgressed through Federal territories, Highways, in violation of E-Commerce laws, Art. I, Sec. 26 8, Cl. 3 of the US Constitution did commerce brick and mortal business by selling its products in the State of Georgia. Where in November and December, 2019 Plaintiff entered into written contracts by purchasing Defendants products. That theft ,conversion and act of Defendants' fraudulent activitions had deprived his constitutional rights as alleged in the facts and claims above.

L. **Relief**

1) Plaintiff seeks actual damages in the amount of $75,000.00

2) Compensatory damages in the amount of $10,000.00

3) Punitive damages in the amount of $250,000.00

4) Defendants to pay court costs, fees and attorney fees

5) That court grants him such other relief as it may appear Plaintiff is entitled to.

6) That Defendants be ordered to conform with good business practices.

7) Otherwise, the court to grant discovery will enable Plaintiff to elicit Corporate bylaws, policies, commercial policies, to obtain internal operating manual of Greendot.

Respectfully Submitted

Mike Redford

Date: This 30, August 2020

DR Mike Redford, GDC 1207476, E2
Calhoun State Prison
P.O. Box 249
Morgan, GA 39866

U.S. POSTAGE PAID
FCM LG ENV
WINDER, GA
30680
SEP 04, 20
AMOUNT
$3.00
R2305M145691-08

UNITED STATES POSTAL SERVICE
1028
90012

PVC

United States District C
Central District of Calif
Office of the Clerk
255 East Temple Street, Room
Los Angeles, CA 90012

SEP - 3 2020