**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIKE REDFORD,<br>Plaintiff,<br>v.<br>GREENDOT CORPORATION, et al.,<br>Defendants. | Case No. CV 20-3260 JGB (PVC)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable Jesus G. Bernal, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

On March 24, 2020, Plaintiff Mike Redford, a Georgia state prisoner proceeding *pro se*, constructively filed a civil complaint pursuant to 42 U.S.C. §§ 1985(3) and 1986, and, potentially, *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). ("Complaint," Dkt. No. 1 at 6 ¶ 9) (asserting that Defendants were "acting under color of federal law"). In the Complaint, Plaintiff broadly alleged that Defendant Green Dot Corporation, its legal

department, and three high-level executives wrongfully blocked him from accessing $1,020.00 in funds on three Green Dot debit cards that he had received as Christmas gifts. (*Id.* at 3-5). Shortly thereafter, the Court granted Plaintiff's application for *in forma pauperis* status. (Dkt. No. 4). On June 2, 2020, the Court dismissed the Complaint with leave to amend due to its many pleading deficiencies, including, but not limited to, the failure to identify any federal actor who violated Plaintiff's constitutional rights. (Dkt. No. 6 at 10-11). Plaintiff filed a First Amended Complaint ("FAC") on June 18, 2020. (Dkt. No. 7). In contrast to the original Complaint, in which Plaintiff suggested that he was bringing constitutional claims under *Bivens*, Plaintiff indicated on the caption of the First Amended Complaint that his claims were now being asserted under 42 U.S.C. § 1983. (*Id.* at 1). Additionally, the FAC greatly expanded the number of individually-named Defendants, added new state law claims, and abandoned the claims under §§ 1985 and 1986. (*Id.* at 10-18). On August 26, 2020, the Court dismissed the FAC with leave to amend due to its many pleading deficiencies, including, but not limited to, the failure to identify any state actor who violated Plaintiff's constitutional rights. (Dkt. No. 8 at 5-7).

Plaintiff filed the instant Second Amended Complaint ("SAC") -- his third attempt to state a cognizable claim -- on September 9, 2020. (Dkt. No. 9). The SAC repeats nearly all of the pleading defects of the FAC, often verbatim, and compounds them with page after page of rambling allegations with absolutely no relevance to the claims at issue. (*See, e.g.*, *id.* at 4-8 (addressing class action jurisdictional requirements); *id.* 18-19 (summarizing law governing government contracts); *id.* at 20-21, 25-26 (discussing Uniform Commercial Code); *id.* at 22-25 (summarizing law governing oral agreements and the statute of frauds); *id.* at 32-33 (addressing California constitution and California Penal Code); *id.* at 34-35 (discussing Federal Tort Claims Act)). Like the original and First Amended Complaints, the SAC attempts to assert federal constitutional violations, (*id.* at 36-56), but unlike the prior iterations of Plaintiff's claims, the SAC does not even attempt to state whether the constitutional claims are being brought under *Bivens* or

§ 1983. (*Id.*). The SAC also appears to allege state common law claims arising from the same acts that purportedly violated Plaintiff's constitutional rights. (*Id.* at 36-56).

Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee. 28 U.S.C. § 1915A(a); *see also In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) ("District courts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel, as the statute does not differentiate between civil actions brought by prisoners."). Additionally, whether or not this action is properly construed as being raised against a governmental entity or employee, in any civil action where, as here, the plaintiff is proceeding IFP, Congress similarly authorizes district courts to screen the complaint. 28 U.S.C. § 1915(e)(2). Under both § 1915A(a), applying to prisoner complaints, and § 1915(e)(2), applying to IFP actions, the court must dismiss the complaint if it determines that the complaint, or any portion thereof, (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. *Id.* §§ 1915A(a) & 1915(e)(2). Furthermore, even where a plaintiff is not proceeding IFP, under Federal Rule of Civil Procedure 12(b)(6), a trial court may dismiss a claim on its own motion "where the claimant cannot possibly win relief." *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see also Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990) (per curiam) (adopting Ninth Circuit's position in *Omar* and noting that a *sua sponte* dismissal in such circumstances "is practical and fully consistent with plaintiff's rights and the efficient use of judicial resources").

Despite the Court's express guidance in its orders dismissing the original and First Amended Complaints with leave to amend, the SAC continues to repeat the same pleading errors. Plaintiff still has not stated a cognizable federal claim. Even assuming, without

deciding, that Plaintiff has stated or could state a claim under state law, the Court would lack diversity jurisdiction to hear it. Plaintiff has failed in each of the three opportunities he has had to state a claim, and it is evident that further attempts at amendment would be futile. Accordingly, it is recommended that the Court dismiss this action with prejudice.

## II.

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Plaintiff sues Green Dot Corporation ("Green Dot"), a private business headquartered in Pasadena, California, and fourteen of its employees and/or directors: (1) Dan Henry (Director, CEO, President); (2) Brandon Thompson (Executive VP of Retail, Tax and PayCard Divisions); (3) Daniel Eckert (Executive VP and Chief Product, Strategy and Development Officer); (4) Jess Unruh (Interim Chief Financial Officer and Chief Accounting Officer); (5) Philip Lerma (Senior VP and Chief Risk Officer); (6) Ellen Richey (Director); (7) George T. Shaheen (Lead Independent Director and Presiding Director); (8) Glinda Bridgforth Hodges (Director); (9) J. Chris Brewster (Director); (10) Jeffrey B. Osher (Director); (11) Kenneth C. Aldrich (Director); (12) Rajeev V. Date (Director); (13) Saturino Nino Fanlo (Director); and (14) William I. Jacobs (Chairman) (collectively, the "Individual Defendants"). (SAC at 1-2, 37). All of the Individual Defendants are ostensibly sued in their individual and official capacities. (*Id.*). However, as was the case with the First Amended Complaint, the SAC is utterly devoid of *any* allegation describing what *any* Individual Defendant specifically did to harm Plaintiff.

Plaintiff alleges that he received three Green Dot debit cards that were purchased as Christmas gifts at a Walmart in Atlanta, Georgia. (*Id.* at 10-11). The cards collectively had a balance of $1,020.00, which Plaintiff attempted to use to pay his legal fees. (*Id.* at 12). Plaintiff claims that Defendants "blocked" him from accessing his money, even

though they continued to deduct recurring monthly fees of "about $7.99." (*Id.*). Despite Plaintiff's "many letters" requesting that either the cards be unblocked or that the money be returned, Defendants refused to give Plaintiff a refund. (*Id.*). Plaintiff contends that Defendants were motivated "by corporate greed acting in violation of interstate commerce clause where the cards were purchased in Atlanta, Georgia." (*Id.*). Although Plaintiff asserts that he received the debit cards as gifts, he also claims that Defendants used "aggressive marketing" to exert extreme pressure on him, which left him with "no other choice" but to enter into a contract with them. (*Id.* at 13). All this has caused Plaintiff pain and suffering, as well as insurmountable financial hardship, which has affected his mental state. (*Id.* at 12-13).

As he did in the FAC, Plaintiff asserts seven causes of action in the SAC that appear to be based, at least in part, on various theories of common law liability, including violation of "Greendot [sic] Corporate policies" (Claim I), "discriminatory treatment" (Claim II), breach of contract (Claim III), conversion (Claim IV), fraud (Claim V), breach of fiduciary duty (Claim VI), and negligence (Claim VII). (*Id.* at 36-56). However, Plaintiff seems to assert that each of these legal wrongs separately violates the same vast array of Constitutional rights. Under each claim, Plaintiff contends that Defendants have violated his: First Amendment right to "freedom of speech"; Fourth Amendment right "to be left alone in the privacy of his home"; Fifth Amendment right to "due process, [against] deprivation of funds to litigate cases in the court of law"; Sixth Amendment right "to counsel [against] deprivation of funds to hire and retain counsel"; Seventh Amendment right to "financial ability to take his case to trial"; Eight Amendment right against "deprivation of medical care"; Thirteenth Amendment right against "deprivation of funds [which] continued his status as Negro slave [sic]"; and Fourteenth Amendment right against "lack of funds resulting in deprivation of due process, equal protection, privileges and immunities." (*Id.* at 36, 38, 40-41, 43, 46, 49, 52-53).

Plaintiff seeks “actual” damages of $75,000.00 arising from his alleged inability to access the $1,020.00 in funds on his Green Dot debit cards; “compensatory” damages in the amount of $10,000.00; punitive damages in the amount of $250,000.00; attorney’s fees and costs; and an order requiring Defendants “to conform with good business practices.” (*Id*. at 56).

## III.
## STANDARD

When reviewing a complaint to determine whether it states a claim upon which relief can be granted, courts apply the standard set forth in Federal Rule of Civil Procedure 12(b)(6). This standard applies whether the complaint is screened under 28 U.S.C. § 1915A, which applies to prisoner complaints, or § 1915(e)(2), which applies to complaints in IFP actions. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (screening pursuant to § 1915A(a) “incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)”); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)).

Dismissal under Rule 12(b)(6) for failure to state a claim is warranted if the plaintiff fails to proffer “enough facts to state a claim to relief that is plausible on its face.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (“To survive § 1915A review, a complaint must ‘contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.’”) (quoting *Iqbal*, 556 U.S. at 678). While a complaint “does not need detailed factual allegations,” to survive Rule

12(b)(6) review, a showing of an entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556 n.3). Pursuant to Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 may be violated when a pleading "says *too little*," and "when a pleading says *too much*." *Knapp v. Hogan*, 738 F.3d 1106, 1108 (9th Cir. 2013) (emphasis in original). A complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011).

*Pro se* pleadings are "held to less stringent standards" than those drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). However, even though the court must interpret a *pro se* complaint liberally and construe all material allegations of fact in the light most favorable to the plaintiff, *see Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), the court does not have to accept as true mere legal conclusions. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Furthermore, in giving liberal interpretation to a *pro se* complaint, the court may not supply essential elements of a claim that were not initially pled. *Pena v. Gardner*, 976 F.2d 469, 471-72 (9th Cir. 1992).

Before dismissing a *pro se* civil rights complaint, a plaintiff should be given "notice of the deficiencies in his or her complaint" with "an opportunity to amend the complaint to overcome deficiencies unless it is clear [the deficiencies] cannot be cured by

amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987). However, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc). "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" *Ismail v. County of Orange*, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987)).

## IV.

## DISCUSSION

### A. <u>The SAC Fails to State a Violation of Plaintiff's Federal Civil Rights</u>

Like the FAC, the SAC summarily asserts that Defendants violated Plaintiff's federal constitutional rights under the First, Fourth, Fifth, Sixth, Seventh, Eighth, Thirteenth and Fourteenth Amendments. (SAC at 36, 38, 40-41, 43, 46, 49, 52-53). Although the SAC purports to sue fourteen Individual Defendants, it does not include a single allegation explaining what any Individual Defendant did to violate Plaintiff's constitutional rights. Furthermore, the SAC's seven "claims" are based on allegations of violations of company policy, state contract law, and state tort law, none of which as alleged has a federal constitutional dimension. These defects, by themselves, are fatal to Plaintiff's claims. However, it is not necessary to address the failures of each constitutional claim separately because the SAC, like every iteration of Plaintiff's claims before it, fails for another fundamental -- and evidently incurable -- reason: Plaintiff has not shown that any action by Green Dot or its executives and directors can be ascribed to a governmental actor acting under color of state or federal law.

As the Court explained to Plaintiff in dismissing the original Complaint with leave to amend, a claim under *Bivens* requires a showing that a federal actor acting under color of federal law violated his federal constitutional rights. (*See* Dkt. No. 6 at 9-14); *see also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001). As the Court explained to Plaintiff in dismissing the First Amended Complaint with leave to amend, a claim under 42 U.S.C. § 1983 requires a showing that a state actor acting under color of state law violated his federal constitutional rights. (*See* Dkt. No. 8 at 5-7); *see also Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

"While generally not applicable to private parties, a § 1983 action can lie against a private party when he is a willful participant in joint action with the State or its agents." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Similarly, "the private status of [an individual] defendant will not [categorically] serve to defeat a *Bivens* claim, provided that the defendant engaged in federal action." *Schowengerdt v. Gen. Dynamics Corp.*, 823 F.2d 1328, 1337-38 (9th Cir. 1987). As the Court has repeatedly explained to Plaintiff, the Ninth Circuit has identified four circumstances under which private persons may be involved in government action to such a degree and in such a manner that they may be deemed to be acting under color of federal or state law. (*See* Dkt. No. 6 at 10-12; Dkt. No. 8 at 5-7).

First, under the "public function" test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Kirtley*, 326 F.3d at 1093; *see also see also Schowengerdt*, 823 F.2d at 1339 n.17 ("[U]nder the 'public function' test, the Supreme Court has 'found state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State.'") (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)). Second, under the "joint action" test, a court will consider whether "the state has so far insinuated itself

into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity" and "knowingly accepts the benefits derived from unconstitutional behavior." *Kirtley*, 326 F.3d at 1093; *see also Schowengerdt*, 823 F.2d at 1339 n.17 ("Under the 'joint action' test, a private party is acting under color of state (or federal) law if 'he is a willful participant in joint action with the [government] or its agents.'") (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).

Third, under the "governmental coercion or compulsion" test, the court considers "whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." *Kirtley*, 326 F.3d at 1094; *see also Broad v. Sealaska Corp.*, 85 F.3d 422, 431 (9th Cir.1996) ("Without governmental encouragement or coercion, actions taken by private corporations pursuant to federal law do not transmute into government action."). Finally, under the "governmental nexus" test, the court asks whether "there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Kirtley*, 326 F.3d at 1095 (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted)).

The SAC does not allege any facts showing that Defendants -- a private, for-profit corporation and its executives, seemingly engaged in business on their own behalf and solely for their own benefit -- satisfied either the "public function," "joint action," "governmental coercion or compulsion," or "governmental nexus" tests such that their actions can fairly be construed to be attributable to the government, whether federal or state. As such, the SAC fails to state a civil rights claim under *Bivens* or § 1983. Accordingly, it is recommended that the Court dismiss the SAC with prejudice to the extent that it attempts to raise civil rights claims under the First, Fourth, Fifth, Sixth, Seventh, Eighth, Thirteenth and Fourteenth Amendments.

**B. The SAC Fails to State a Claim Under the Commerce Clause**

In addition to alleging that Defendants violated his civil rights, Plaintiff also repeatedly asserts that Defendants "violated Plaintiff's United States Interstate Commerce Clause [sic] . . . ." (SAC at 36, 38, 40-41, 43, 46, 49, 52-53). The Commerce Clause, set forth in art. I, sec. 8, cl. 3 of the US Constitution, authorizes Congress to "regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes." However, the Commerce Clause plainly has no application here. Plaintiff appears to believe that a breach of contract between purely private parties somehow constitutes a violation of the Commerce Clause. It does not. As the Court explained in dismissing the FAC with leave to amend, (Dkt. No. 8 at 9-10), the Commerce Clause concerns the scope of Congress's power to regulate interstate commerce, and acts as a "limit on state legislation that discriminate[s] against interstate commerce." *United States v. Lopez*, 514 U.S. 549, 553 (1995); *see also Dennis v. Higgins*, 498 U.S. 439, 447 (1991) ("[T]he Commerce Clause is a power-allocating provision, giving Congress pre-emptive authority over the regulation of interstate commerce. It is also clear, however, that the Commerce Clause does more than confer power on the Federal Government; it is also a substantive 'restriction on permissible state regulation' of interstate commerce.") (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979)). The claims and allegations in the SAC concern Plaintiff's purported inability to access funds on three Green Dot debit cards. These claims have nothing to do with the allocation of power between the states and the federal government under the Commerce Clause. Accordingly, it is recommended that the Court dismiss the SAC with prejudice to the extent that it attempts to raise claims under the Commerce Clause.

### C. <u>The Court Does Not Have Jurisdiction to Hear Plaintiff's State-Law Claims in the Absence of a Federal Question</u>

"Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. Subject-matter jurisdiction exists in civil cases involving a federal question or diversity of citizenship." *Bates v. Gen. Nutrition Centers, Inc.*, 897 F. Supp. 2d 1000, 1002 (C.D. Cal. 2012) (internal citations omitted).

The SAC, like the prior iterations of Plaintiff's claims, fails to state a viable claim under federal law. While the SAC attempts to allege state law claims, it is not necessary for the Court to determine whether any of the claims as alleged adequately state a claim under state law. In the absence of a viable federal claim, the Court may decline to exercise supplemental jurisdiction over the state law claims, and the Court lacks diversity jurisdiction to hear the state law claims on their own.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." However, a court "may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (quoting 28 U.S.C § 1367(c)(3)); *see also Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) (where a court declines to exercise supplemental jurisdiction, dismissal of the state law claims is without prejudice). Here, the Court lacks any basis for exercising supplemental jurisdiction over Plaintiff's state law claims upon the dismissal of the SAC's federal claims for failure to state a claim.

Additionally, even if Plaintiff were to abandon all of his failed federal claims and attempt to reassert his contract and tort claims solely under state law on the basis of this Court's diversity jurisdiction, the claims would fail because the Court would lack diversity jurisdiction to hear them. Jurisdiction based on diversity of citizenship is governed by 28 U.S.C. § 1332, which provides in relevant part that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -- (1) citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). Accordingly, even if an action does not present a "federal question," a district court may have diversity jurisdiction if the parties on each side are citizens of different states and the amount in controversy exceeds $75,000.

"The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613-14 (9th Cir. 2016). Therefore, "'[t]he essential elements of diversity jurisdiction . . . must be affirmatively alleged in the pleadings.'" *Bautista v. Pan Am. World Airlines*, Inc., 828 F.2d 546, 552 (9th Cir. 1987) (citation omitted). As such, to the extent that Plaintiff's breach of contract and tort claims are an attempt to raise state law claims, Plaintiff must plead both diversity of citizenship and an amount in controversy in excess of $75,000 for this Court to have subject matter jurisdiction.

For purposes of determining citizenship under § 1332, a corporation is deemed a "citizen" of both the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A natural person's state of citizenship is determined not by the state in which the person happens to be residing at the time suit is filed, but rather by the person's "domicile," *i.e.*, "her permanent home, where she resides

with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).[1]

Where possible, the amount in controversy is determined from the allegations of the complaint. *See Sky-Med, Inc. v. Fed. Aviation Admin.*, 965 F.3d 960, 965 (9th Cir. 2020) ("[W]e generally calculate the amount in controversy by examining the face of the well-pleaded complaint."); *see also Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself."). However, "'the sum claimed by the plaintiff controls [only] if the claim is apparently made in good faith.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Bald allegations of damage amounts unsupported by evidence are "not conclusive." *Welsh v. New Hampshire Ins. Co.*, 843 F. Supp. 2d 1006, 1009 (D. Ariz. 2012); *see also Parker v. U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust*, 2020 WL 7479633, at *2 (C.D. Cal. Dec. 18, 2020) (a "facially implausible" damages claim in a complaint "does not satisfy the amount in controversy requirement" for diversity jurisdiction). If "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount," diversity jurisdiction cannot be maintained. *St. Paul Mercury Indem. Co.*, 303 U.S. at 289; *see also Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996).

---

[1] Although the issue does not appear to have been addressed by the Ninth Circuit, federal courts typically presume that a prisoner remains a citizen of the state he or she formerly resided in prior to incarceration. *See, e.g.*, *Hall v. Curran*, 599 F.3d 70 (1st Cir. 2010); *Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006); *Denlinger v. Brennen*, 87 F.3d 214 (7th Cir. 1996); *Housand v. Heiman*, 594 F.2d 923, 925 n. 5 (2nd Cir. 1979) (per curiam); *Jones v. Hadican*, 552 F.2d 249, 250–251 (8th Cir. 1977); *Stifel v. Hopkins*, 477 F.2d 1116 (6th Cir. 1973).

Potential punitive damages may also be part of the amount in controversy when they are recoverable as a matter of law. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 946 (9th Cir. 2001). However, when the amount in controversy depends largely on alleged punitive damages, the court "will scrutinize a claim . . . more closely than a claim for actual damages to ensure Congress's limits on diversity jurisdiction are properly observed." *McCorkindale v. American Home Assurance Co.*, 909 F. Supp. 646, 655 (N.D. Iowa 1995). "[T]he mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met." *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004). Where the availability or typical size of a punitive damages award is in doubt, the party seeking to invoke the Court's diversity jurisdiction "must present evidence that punitive damages will more likely than not exceed the amount needed to increase the amount in controversy to $75,000." *Id.*; *see also McCaa v. Mass. Mut. Life Ins. Co.*, 330 F. Supp. 2d 1143, 1149 (D. Nev. 2004) (finding that action did not meet requisite amount in controversy where punitive damages in the amount necessary to satisfy § 1332(a) were "unlikely" and the party seeking the court's diversity jurisdiction failed to provide evidence of punitive damages awards in similar cases).

The SAC alleges, correctly, that Green Dot is headquartered in Pasadena, California, but does not state where Green Dot is incorporated. (*See, e.g.*, SAC at 37). Although the SAC does not appear to allege the citizenship of the Individual Defendants or Plaintiff himself, even presuming, without deciding, that there is complete diversity of citizenship between Plaintiff and all of the Defendants, diversity jurisdiction will not lie because Plaintiff cannot establish the minimum $75,000 amount in controversy. Although the SAC summarily alleges actual damages of $75,000.00, undoubtedly for the purpose of establishing diversity jurisdiction, that figure is implausible and unsupported by any evidence. (SAC at 56). The FAC sought compensatory damages of $1,020.00 -- the value of the cards. (FAC at 19). Nowhere in the SAC does Plaintiff explain how a

purported loss of $1,020.00 could give rise to actual damages of $75,000.00. The value of the property lost is, in this instance, a more appropriate measure of damages. *Hunt v. Washington State Apple Advertising Comn'n*, 432 U.S. 333, 347-48 (1977). Accordingly, the SAC's unsupported actual damages claim does not satisfy the $75,000.00 amount in controversy requirement for diversity jurisdiction. Similarly, while the SAC also seeks punitive damages of $250,000, it is highly unlikely that Plaintiff would be entitled to a punitive damages award in that amount, if indeed he would be entitled to any punitive damages at all.

As a preliminary matter, it is questionable whether Plaintiff is entitled to raise *any* claims against Green Dot in a court of law. The Cardholder Agreement, attached as an exhibit to the FAC, expressly requires "all disputes to be resolved by way of binding arbitration."[2] (*See* FAC, Exh. 2, Dkt. No. 7-2, at 1). Even if any potential state law claims were not subject to the arbitration clause, which the Court does not decide, the Cardholder Agreement provides that to the extent that federal law does not govern any disputes, the "laws of the state of Utah apply." (*Id.* at 11). Under Utah law, "[t]he general rule is that punitive damages cannot be awarded for a breach of contract" unless, in the uncommon case, the breach rises to the level of an independent tort. *Jorgensen v. John Clay and Co.*, 660 P.2d 229, 232 (Utah 1983). Nonetheless, even if Plaintiff could somehow allege a theoretical entitlement to punitive damages on his breach of contract or tort claims, Utah law generally requires that punitive damages be proportional to actual

---

[2] Although Petitioner did not attach a copy of the Cardholder Agreement to the SAC, the SAC's breach of contract claims appear to be based on the Agreement. Accordingly, the Agreement is not considered "outside" the SAC for purposes of a Rule 12(b)(6) analysis. *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (at the Rule 12(b)(6) stage, a court may "consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice"); *see also Prime Healthcare Servs., Inc. v. Humana Ins. Co.*, 230 F. Supp. 3d 1194, 1203 (C.D. Cal. 2017) ("A court should consider the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice.") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

damages. The Utah Supreme Court established presumptively acceptable ratios for punitive damages awards in *Crookston v. Fire Insurance Exchange*, 817 P.2d 789 (Utah 1991). As summarized by the Utah Supreme Court in a recent case, the *Crookston* court determined:

> If the amount of punitive damages is less than $100,000, the award is excessive if it exceeds actual damages by a ratio of greater than 3:1. [*Crookston*, 817 P.2d at 810]. If the amount of punitive damages is greater than $100,000, "the acceptable ratio appears lower." *Id.* 7. If a damage award exceeds the relevant ratio, it is "presumptively excessive" and the court must then consider numerous factors in deciding whether to uphold the award anyway. *Id.* at 811.

*Biesele v. Mattena*, 449 P.3d 1, 9 (Utah 2019) (approving two punitive damages awards where the ratios of punitive damages to actual damages were "1.128 and 1.330 respectively," both of which were "well under 2:1 and thus certainly satisfy the *Crookston* requirement that the ratio be 'lower' than 3:1").

The punitive damages Plaintiff seeks -- $250,000 -- are nearly 250 times the amount of Plaintiff's actual alleged loss of $1,020.00. Even if the Court were to consider only the amount of punitive damages necessary to reach the $75,000 threshold for diversity jurisdiction, the amount required still would be many multiples of the 3:1 ratio that Utah courts deem presumptively acceptable. Therefore, even if Plaintiff could somehow avoid arbitration, it does not appear that he will be able to invoke this Court's diversity jurisdiction on any state law claims because he appears unable to establish the requisite amount in controversy. Accordingly, it is recommended that the Court dismiss the SAC without prejudice, but without leave to amend, to the extent that it attempts to raise state law claims.

**V.**

**RECOMMENDATION**

For the foregoing reasons, it is recommended that the court issue an Order (1) accepting this Report and Recommendation, and (2) directing that judgment be entered dismissing this action with prejudice with respect to the SAC's federal claims and without prejudice, but without leave to amend, with respect to the SAC's state law claims.

DATED: January 14, 2021

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE